Slip Op. 20-17

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **UNITED STATES,**<br><br>         **Plaintiff,**<br><br>**v.**<br><br>**MAVERICK MARKETING, LLC ET AL.,**<br><br>         **Defendants and Consolidated Defendants.** | **Before: Claire R. Kelly, Judge**<br><br>**Consol. Court No. 17-00174** |

## <u>MEMORANDUM AND ORDER</u>

[Granting in part and denying in part Defendants' motions to compel discovery and consider sanctions.]

Dated: February 7, 2020

<u>Stephen Carl Tosini</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for plaintiff United States. With him on the brief were <u>Joseph H. Hunt</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Claudia Burke</u>, Assistant Director.

<u>Barry Marc Boren</u>, Law Offices of Barry Boren, of Miami, FL, and <u>Gerson M. Joseph</u>, Gerson M. Joseph, P.A., of Weston, FL, for defendants Maverick Marketing, LLC and Good Times USA, LLC.

<u>Rhonda A. Anderson</u>, Rhonda A. Anderson, P.A., of Coral Gables, FL, for defendant Gateway Import Management, Inc.

Kelly, Judge:   Before the court are motions to compel discovery, <u>see</u> [Defs.'

Maverick Marketing, LLC & Good Times USA, LLC's] Mot. Order Compelling Disc. &

Consideration Sanctions, Sept. 26, 2019, ECF No. 67 ("Maverick's Mot."); [Defs.'

Gateway Import Management, Inc. & Good Times USA, LLC's] Mot. Order Compelling

Disc. & Consideration Sanctions, Sept. 26, 2019, ECF No. 66 (from associated docket

Ct. No. 17-00232) ("Gateway's Mot.") (collectively, "motion to compel"), filed pursuant to

United States Court of International Trade ("USCIT") Rule 37(a)(2).[1]   Defendants

Gateway Import Management, Inc. ("Gateway"), Good Times USA, LLC ("Good Times"),

and Maverick Marketing, LLC ("Maverick") contend that the United States ("Plaintiff") has

inadequately responded to Defendants' requests for production ("RFPs") and

interrogatories, and ask the court to enter an order compelling Plaintiff to "provid[e]

meaningful answers to the questions asked and specifically identify[] the documents

referred to in their responses[.]"   See Gateway's Mot. at 15; Maverick's Mot. at 17.

Defendants also request that this court enter sanctions against Plaintiff for its alleged

failure to respond to requested discovery.   Gateway's Mot. at 1; Maverick's Mot. at 1.

Plaintiff counters that Defendants' motion to compel is "unwarranted" and requests the

court to deny the motion.   See Pl.'s Opp'n Defs.' Mots. Compel. at 1, Oct. 11, 2019, ECF

No. 69 ("Pl.'s Opp'n Br.").

For the following reasons, this court grants Defendants' motion to compel with

respect to the following RFPs and Interrogatories: Maverick RFP Nos. 4, 10, 11, 12, 13,

14, 15, 16, 19, 20, 22, 24, 26, 27, 28, 29; Maverick Interrogatory Nos. 8, 9, 11, 19, 24;

Gateway RFP Nos. 4, 5, 11, 12, 13, 14, 15, 16, 17, 19, 20, 22, 24, 27, 28, 29, 30; Gateway

Interrogatory Nos. 8, 9, 11, 19, 24; Good Times RFP Nos. 1, 3, 9, 10, 13, 23; Good Times

Interrogatory No. 19.   However, Defendants' motion to compel is denied with respect to

---

[1] Defendants Maverick and Good Times moved to compel discovery in the lead docket of this consolidated action.  See Maverick's Mot.  In addition, Defendants Gateway and Good Times filed a motion to compel discovery in the associated docket of Court No. 17-00232 but not in the lead docket.  See Gateway's Mot.  The court considers the motions to compel together.

the following RFPs and Interrogatories: Maverick RFP Nos. 9, 21, 25, 30, 31, 32, 33, 38, 39; Maverick Interrogatory Nos. 15, 20, 21, 25; Gateway RFP Nos. 10, 21, 26, 31, 32, 33, 34, 39, 40; Gateway Interrogatory Nos. 15, 20, 21, 25; Good Times RFP Nos. 4, 5, 6, 7, 8, 11, 15, 17, 18, 19, 20, 21; and, Good Times Interrogatory Nos. 7, 9, 10, 22, 23.

Finally, this court declines to consider sanctions against Plaintiff, at this juncture, for an alleged failure to comply with Defendants' motion to compel.

## BACKGROUND

Plaintiff commenced separate actions pursuant to section 592 of the Tariff Act of 1930, as amended 19 U.S.C. § 1592(d) (2012),[2] which were later consolidated.  See Am. Summons, Aug. 3, 2017, ECF No. 8; Compl., July 10, 2017, ECF No. 2; Order, Sept. 12, 2019, ECF No. 66 (consolidating Ct. Nos. 17-00174, 17-00232, 19-00004, and 19-00019 under Ct. No. 17-00174).  Plaintiff seeks to recover unpaid Federal Excise Tax ("FET"), with respect to entries of cigars made between July 10, 2012 and March 27, 2015 and alleges Defendants' FET calculations were not, as statutorily required, based on arm's-length transactions.  See Compl. at ¶¶ 1, 21–33; see also Pl.'s Opp'n Br. at 1.

Defendants raise several affirmative defenses.  Relevant here, Maverick, Good Times, and Gateway, argue that they were not negligent "because they received and reasonably relied on professional advice from their customs house broker and an

---

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

experience trade attorney" and fully complied with applicable statutes and regulations.[3]

See Defs. [Maverick] & [Good Times's] Answers to Compl. at Third Affirm. Defense, Mar.

29, 2018, ECF No. 48 ("Maverick & Good Times's Answer); Def. [Gateway's] Answer to

Compl. at Third Affirm. Defense, Aug. 1, 2018, ECF No. 49 ("Gateway's Answer") (from

associated docket Ct. No. 17-00232).[4]   Defendants also argue that they "were not

negligent" because "Plaintiff had established a uniform practice" of allowing the same

behavior complained of in this case.  See id. at Fifth Affirm. Defense.

On March 12, 2019, Defendants served their respective interrogatories on Plaintiff.

See Gateway's Mot. at Exs. C–D; Maverick's Mot. at Exs. C–D.  Thereafter, on April 4,

2019, Defendants served their respective RFPs on Plaintiff.  Gateway's Mot. at Exs. A–

B; Maverick's Mot. at Exs. A–B.  On April 12, 2019, Plaintiff responded to Defendants'

---

[3] In their First and Second Affirmative Defenses, Defendants allege that 26 C.F.R. § 48.4216(b)(2)(e) (2012), which Plaintiff references in its complaint, see Compl. at ¶ 10, is "void for ambiguity," facially and as applied. See Defs. [Maverick] & [Good Times's] Answer to Compl. at First & Second Affirm. Defenses, Mar. 29, 2018, ECF No. 48 ("Maverick & Good Times's Answer"), Def. [Good Times's] Answer to Compl. at First & Second Affirm. Defenses, Aug. 1, 2018, ECF No. 48 (from associated docket Ct. No. 17-00232) ("Good Times's Answer"); Gateway's Answer at First & Second Affirm. Defenses (collectively, "Defendants' Answers").  That regulation defines sales at arm's-length.  See 26 C.F.R. § 48.4216(b)(2)(e).  Good Times also avers that 26 C.F.R. § 48.4216(b)(2)(e) does not apply to any of its transactions.  Good Times's Answer at First & Second Affirm. Defenses.

In their Fourth, Sixth, and Seventh Affirmative Defenses, Defendants aver they were not liable for failing to disclose any alleged "special arrangement" because: they provided all required information to Customs and Border Protection, see Defendants' Answers at Fourth Affirm. Defense; the sales between Maverick and Good Times were not made pursuant to a "special arrangement" because the parties stood in adverse economic positions, see id. at Sixth Affirm. Defense; and, Maverick and Good Times were not related parties but an independent contractor and buyer, respectively.  See id. at Seventh Affirm. Defense.

[4] Good Times separately avers that it was not negligent with respect to any allegedly false statements made to Customs, because it was not the importer and thus did not communicate with Customs, both generally and regarding these entries, and was under no obligation to do so.  See Good Times's Answer at Third Affirm. Defense.

interrogatories; following an agreed extension of time, Plaintiff replied to Defendants'

RFPs on June 7, 2019.  Gateway's Mot. at Exs. E–H; Maverick's Mot. at Exs. E–H.  On

June 27, 2019, Defendants notified Plaintiff of their objections to Plaintiff's RFP and

interrogatory responses.  Gateway's Mot. at Exs. I–L; Maverick's Mot. at Exs. I–L.  Plaintiff

responded to Defendants' objections on July 10, 2019 and supplemented its responses.

Gateway's Mot. at Exs. M–N; Maverick's Mot. at Exs. M–N.

This court conferenced with the parties twice in an effort to resolve their dispute.

See Teleconference, Oct. 18, 2019, ECF No. 72; Memo. & Order, Nov. 1, 2019, ECF No.

73; Teleconference, Jan. 24, 2020, ECF No. 83; Order, Jan. 24, 2020, ECF No. 85.

Unfortunately, a significant number of items remain in dispute.  See Defs.' Discovery

Status Report, Feb. 3, 2020, ECF No. 89.[5]

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1582.  See United States v.

Maverick Mktg., LLC, 42 CIT __, __, 322 F. Supp. 3d 1373, 1379 (2018) (holding that the

court possesses subject-matter jurisdiction in this case) ("Maverick I"); see also United

States v. Gateway Imp. Mgmt., 42 CIT __, 324 F. Supp. 3d 1328 (2018).  This court has

broad discretion in deciding discovery matters. See United States v. Greenlight Organic,

Inc., 41 CIT __, __, 280 F. Supp. 3d 1367, 1378 (2017).   USCIT Rule 26(b)(1) permits

---

[5] Defendants jointly filed their respective discovery status reports. Given that the discovery status
reports itemize, and excerpt, only the interrogatories and RFPs that remain in dispute, this opinion
refers to those status reports, rather than the exhibits containing, inter alia, the RFPs,
Interrogatories, and Responses appended to Defendants' motions to compel.  See Discovery
Status Report of Def. [Good Times] in the Maverick and Gateway Cases, Feb. 3, 2020, ECF No.
89-1 ("Good Times Status Report"); Discovery Status Report of Def. [Maverick], Feb. 3, 2020,
ECF No. 89-2 ("Maverick Status Report"); Amend. Status Report of Def. [Gateway], Feb. 4, 2020,
ECF No. 90 ("Gateway Status Report").

"discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the discovery outweighs its likely benefit." USCIT R. 26(b)(1).  Information within the scope of discovery need not be admissible in evidence to be discoverable.  Id.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.

## DISCUSSION

### I.  Discovery of Trademark and Audit Information Concerning Nonparties

Defendants requested every document or record "which identifies all the trademarks on the cigars manufactured by [various commercial entities] that were imported by [various importers.]" Maverick Status Report at Maverick RFP Nos. 30–33; Gateway Status Repot at Gateway RFP Nos. 31–34.[6]  Defendants contend that the requested trademark information is relevant because it supports Defendants' affirmative defenses, against Plaintiff's penalty action under 19 U.S.C. § 1592(a), which provides that no person may, by negligence, introduce or attempt to introduce any merchandise

---

[6] Defendants requested information that identifies: "all the trademarks on cigars manufactured by Swedish Match Dominicana that were imported by Family Tobacco"; "all the trademarks on the cigars manufactured by Swisher Dominicana that were imported by Family Tobacco Traders"; "all the trademarks on large cigars imported by All American Tobacco where the trademarks were not owned or registered by All-American Tobacco"; and, "all the trademarks on large cigars imported by Family Tobacco Traders where the trademarks were not owned or registered by Family Tobacco Traders."  Maverick Status Report at Maverick RFP Nos. 30–33; Gateway Status Repot at Gateway RFP Nos. 31–34

into the commerce of the United States by a material and false statement or omission. Maverick's Mot. at 8; Gateway's Mot. at 7; see also United States v. Ford Motor Co., 463 F.3d 1267, 1279 (Fed. Cir. 2006) (To establish a violation of section 1592(a), "Customs has the burden merely to show that a materially false statement . . . occurred; once it has done so, the defendant must affirmatively demonstrate that it exercised reasonable care under the circumstances."). Defendants contend that their requests are proper because they tend to show that Defendants acted in reasonable belief that the goods were properly entered, and the FETs were appropriately calculated. See Maverick's Mot. at 12; Gateway's Mot. at 11. To this end, Defendants specifically allege that (1) Customs and Border Protection ("Customs") had an established and uniform practice ("EUP") of allowing what Defendants did here, and (2) that Defendants exercised reasonable care. See Maverick's Mot. at 8, 12; Gateway's Mot. at 7, 11; see also Compl. at ¶ 20; Maverick & Good Times's Answer at Third & Fifth Affirm. Defenses; Gateway's Answer at Third & Fifth Affirm. Defenses.[7] Plaintiff objects to each request, averring that the requested information is "irrelevant [and private] information regarding unrelated taxpayers" that would be "overly burdensome [to produce] pursuant to USCIT R. 26(b)(1)."[8] See Maverick Status Report at Maverick RFP Nos. 30–33; Gateway Status Report at Gateway

---

[7] The Third and Fifth Affirmative Defenses relate to whether Defendants acted reasonably. As noted above, they concern, respectively, Defendants' receipt and reliance on professional advice and Plaintiff's allegedly established and uniform practice of allowing the same behavior. See Maverick & Good Times's Answer at Third & Fifth Affirm. Defenses; Gateway's Answer at Third & Fifth Affirm. Defenses.

[8] Further, Plaintiff avers that is prohibited from producing third-party tax information by statute, absent a waiver from each taxpayer. See, e.g., Maverick Status Report at Maverick RFP Nos. 30–33. Given that RFP Nos. 30–33 request irrelevant information, the court does not address whether Plaintiff is proscribed from disclosing third-party tax information in discovery.

RFP Nos. 31–34.  For the reasons that follow, Defendants arguments misconstrue both the requirements for establishing a uniform practice and the reasonable care standard.

Defendants allege as an affirmative defense that Customs has an "established and uniform practice of allowing and liquidating entries involving the exact same behavior complained of in this case in numerous ports, by numerous importers, over a long period of time."  <u>See</u> Maverick & Good Times's Answer at Fifth Affirm. Defense; Gateway's Answer at Fifth Affirm. Defense.  They refer to Customs' longstanding position, now codified at 19 U.S.C. § 1315, to give notice of a change in EUP that results in a higher rate of duty or charge.  The proscription against unnotified changes to an EUP, set forth under section 1315, centers on the consistent administration of rates of duty or charges.  Section 1315 provides that "[n]o administrative ruling resulting in the imposition of a higher rate of duty or charge . . . applicable to imported merchandise under an [EUP] shall be effective" without notice.  <u>See</u> 19 U.S.C. § 1315(d).  Before the publication of a ruling which has the effect of changing a rate of duty or charge within the meaning of 19 U.S.C. § 1315(d), notice that the practice (or prior ruling on which that practice was based) is under review will be published in the Federal Register and interested parties will be given an opportunity to make written submissions with respect to the correctness of the contemplated change.  The invocation of EUP is simply inapposite.  It applies to rulings that establish rates of duty or charges, not enforcement decisions.  <u>See, e.g.</u>, <u>Sea-Land Service, Inc. v. United States</u>, 23 CIT 679, 689–90, 69 F. Supp. 2d 1371, 1380 (1999) (noting that section 1315(d) is limited to an administrative ruling and does not apply when a judicial decision mandates a change in an EUP).

Moreover, even if one were to adapt the principle embodied in the terminology EUP, here it would be a poor fit.   The plain meaning of practice is "[t]he act of accomplishing something; the actual application of knowledge through performance." BLACK'S LAW DICTIONARY 1419 (11th ed. 2019).[9]   Declining to act, therefore, does not establish a practice.  By contrast, the government has discretion to dedicate resources in bringing civil actions as it sees fit.   Therefore, Defendants attempt to defend the complained-of behavior by reference to Customs' alleged practice of non-enforcement not only misconstrues section 1315 but also misunderstands Customs' enforcement authority.

With respect to Defendants' "reasonable care" defense, Customs' guidelines define "reasonable care" as follows:

> All parties, including importers of record or their agents, are required to exercise reasonable care in fulfilling their responsibilities involving entry of merchandise. These responsibilities include, but are not limited to: providing a classification and value for the merchandise; furnishing information sufficient to permit Customs to determine the final classification and valuation of merchandise; taking measures that will lead to and assure the preparation of accurate documentation, and determining whether any applicable requirements of law with respect to these issues are met. In addition, all parties, including the importer, must use reasonable care to provide accurate information or documentation to enable Customs to determine if the merchandise may be released. Customs may consider an importer's failure to follow a binding Customs ruling a lack of reasonable care. In addition, unreasonable classification will be considered a lack of reasonable care (e.g., imported snow skis are classified as water skis). Failure to exercise reasonable care in connection with the importation of merchandise may result in imposition of a section 592 penalty for fraud, gross negligence or negligence.

---

[9] The term "establish" is defined as "[t]o make or form; to bring about or into existence", and "uniform" as "[c]haracterized by a lack of variation; identical or consistent."   BLACK'S LAW DICTIONARY 688, 1840 (11th ed. 2019).

19 C.F.R. Pt. 171, App. B(D)(6) (2014).[10]  Therefore, importers exercise reasonable care when they, inter alia, provide sufficient and accurate information to Customs to permit it to determine the proper value of the merchandise.  Here, Defendants are accused of making material omissions, and false declarations, having the potential to prevent proper valuation of the merchandise.  See Compl. at ¶ 23, July 10, 2017, ECF No. 2; Compl. at ¶ 23, Sept. 6, 2017 ECF No. 2 (from associated docket Ct. No. 17-00232).  Evidence of how Plaintiff has treated other such omissions and declarations is not relevant to the question of whether Defendants acted reasonably.[11]  The reasonable care standard is concerned with the reasonableness of a defendant's actions alone—not whether the actions of similarly situated entities evinces a "reasonableness" standard that would bear on defendant's actions.  See e.g., United States v. Aegis Sec. Ins. Co., 43 CIT __, __, Slip Op. 19-162 at 26 (Dec. 17, 2019) (determining that, whether or not similarly situated importers would have made the same error, or "would have been similarly inattentive," does not inform the question of whether the importer acted reasonably. Whether or not one exercises reasonable care does not depend upon the "consensus in the community[,]" but rather, on the "application of reason.").

---

[10] The citation is to the Code of Federal Regulations 2014 edition, the most recent version in effect at the time of the last entries of the subject merchandise.  The entries at issue in this action were imported between the years 2012 and 2015.  See Compl. at ¶ 1.

[11] The HR Report on the amendments to 19 U.S.C. § 1592 provides examples of steps an importer should take in meeting the "reasonable care" standard, including: "seeking guidance from the Customs Service through the pre-importation or formal ruling program; consulting with a Customs broker, a Customs consultant, or a public accountant or an attorney; using in-house employees such as counsel, [etc.]" H.R. REP. NO. 103-361, pt.1, at 120 (1993), reprinted in 1993 U.S.C.C.A.N. 2552, 2670.  Notably, these examples do not include relying on the government's past action or inaction toward the behavior.  Id.

Likewise, Defendants' desire, here, to see investigatory files in order to demonstrate that the United States has not acted in a similar manner against other companies in the past cannot serve any relevant purpose.  See Maverick & Good Times's Answer at Fifth Affirm. Defense; Gateway's Answer at Fifth Affirm. Defense.  Customs' past enforcement decisions are not relevant to the question of whether the importer has exercised reasonable care.  See e.g., United States v. Hitachi America, Ltd., 21 CIT 373, 391, 964 F. Supp. 344, 363 (1997), aff'd in part, rev'd in part on other grounds, 172 F.3d 1319 (1999) (the federal government is not estopped to enforce laws against citizens when it later ascertains that their actions were not in compliance with the law.).[12]

Accordingly, the motion to compel responses to Maverick RFP Nos. 9, 25, 30, 31, 32, 33, 38, 39 and Gateway RFP Nos. 10, 26, 31, 32, 33, 34, 39, 40 is denied, because the discovery sought is not relevant.

## II. Affiliate Tax Information

Defendants' request for affiliate nonparty tax information is also denied for lack of relevancy.   Defendants argue that the affiliate nonparty tax information is relevant because it would demonstrate that its importation practices were reasonable under the circumstances.  See Maverick's Mot. at 7–13.  Specifically, Good Times explained that "[t]he history of the governments' interaction with Good Times and its owners is relevant to the Defendants fifth affirmative defense which asserts 'that Plaintiff had a uniform and

---

[12] Defendants also argue that they need much of this information to discern how Plaintiff calculated the FETs due. See Maverick Status Report at Maverick RFP Nos. 9, 25, 38, 39; Gateway Status Report at Gateway RFP Nos. 10, 26, 39, 40.  Separately, Defendants specifically seek to compel documents concerning the calculation of the FET, and the court is granting the Defendants' motion with respect to those particular requests.  See, e.g., Maverick Status Report at Maverick RFP No. 4; Gateway Status Report at Gateway RFP Nos. 4, 5.

established practice of allowing and liquidating entries involving the exact same behavior complained of in this case[.]'" Maverick's Mot. Ex. I at 2.  Here, as explained above, evidence that the government refrained, in the past, from acting against similar arrangements is not relevant to the issue of whether Defendants acted negligently because the reasonable care inquiry is focused on whether Defendants themselves acted reasonably.  See Aegis, 43 CIT at __, Slip Op 19-162 at 24–27.  Plaintiff is not estopped from commencing this enforcement. See Hitachi, 21 CIT at 391, 964 F. Supp. at 363. Therefore, the motion to compel responses is denied for Good Times RFP Nos. 4, 5, 6, 7, 8, 15, 17, 18, 19, 20, 21.

### III. Remaining RFPs and Interrogatories

The remaining RFPs and interrogatories in dispute largely concern the sufficiency of Plaintiff's response either with respect to electronically stored information ("ESI"), or the completeness of interrogatories.  The Defendant's motion to compel is granted with respect to Maverick RFP Nos. 4, 10, 11, 12, 13, 14, 15, 16, 19, 20, 22, 24, 26, 27, 28, 29; Gateway RFP Nos. 4, 5, 11, 12, 13, 14, 15, 16, 17, 19, 20, 22, 24, 27, 28, 29, 30; Good Times RFP Nos. 1, 3, 9, 10, 13, 23; Maverick Interrogatory Nos. 8, 9, 11, 19, 24; Gateway Interrogatory Nos. 8, 9, 11, 19, 24; and, Good Times Interrogatory No. 19.  The motion is denied with respect to Maverick RFP No. 21, Gateway RFP No. 21, Good Times RFP No. 11, as well as Maverick Interrogatory Nos. 15, 20, 21, 25; Gateway Interrogatory Nos. 15, 20, 21, 25; and, Good Times Interrogatory Nos. 7, 9, 10, 22, 23, as discussed further below.

**RFPs**

U.S. Court of International Trade Rule 34(b) governs production of ESI and provides:

> Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> (i)     A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> (ii)    If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms which it is ordinarily maintained or in a reasonably usable form or forms[.]

USCIT R. 34(b)(2)(E); see also Fed. R. Civ. P. 34(b)(2)(E).  Rule 34(b)(2)(E) addresses the form that a production of documents or ESI should assume in response to a request for production, and contemplates that a responding party must produce ESI organized and labeled to correspond to the categories in the request, unless the responding party can produce ESI as maintained in the ordinary course of business.[13]

---

[13] Decisions interpreting the analogous Federal Rule of Civil Procedure Rule 34(b)(2)(E) provide guidance to discerning the requirements of production.  See USCIT R. 1 ("The court may refer for guidance to the rules of other courts.").  Courts are split as to whether ESI production must comply with both Federal Rule of Civil Procedure Rule 34(b)(2)(E)(i) and 34(b)(2)(E)(ii), given that subsections (i) and (ii) appear to impose separate requirements on "documents" and "ESI."  Some courts read the Advisory Committee Notes as evincing the drafter's intent to distinguish traditional hardcopy production from the "new" category of electronic production.  See, e.g., National Jewish Health v. WebMD Health Services Group, Inc., 305 F.R.D. 247, 252–53 (D. Colo. 2016) (referring to Fed. R. Civ. P. 34 Advisory Committee Notes (2006 Amendment, subdivision b)).  In doing so, they emphasize that the searchability of electronic documents, unlike paper documents, warrants two different production procedures.  See id. at 253.  Although a particular ESI form may be "reasonably usable" if it is searchable, see, e.g., Anderson Living Trust, 298 F.R.D. 514, 527 (D. N.M. 2014) (explaining that the drafters of Rule 34(b)(2)(E)(ii) intended to treat ESI as an entirely new category, separate and apart from documents, in order to recognize that text searching

(footnote continued)

Therefore, although Rule 34 may not oblige a responding party to organize and label documents for the convenience of the requesting party, the production of ESI must be rationally organized to permit the requesting party, with reasonable effort, to identify and obtain the documents responsive to their request.  See City of Colton v. American Promotional Events, Inc., 277 F.R.D. 578, 584–85 (C.D. Cal. 2011).  A responding party fails to meet its duty of production when it produces undifferentiated documents, raising "unnecessary obstacles for the requesting party" in the production of ESI.  See Fed. R. Civ. P. 34 Advisory Committee Notes (2006 Amendment, subdivision b).

Plaintiff's production with respect to many RFPs is insufficient.  Defendants' RFPs were often met with the general assertion that "[t]he Government has produced all responsive, non-privileged documents in its possession."  See, e.g., Good Times Status Report at Good Times RFP No. 10.  Sometimes the responses reference examples yet

---

technologies allow parties to organize ESI according to their own preferences), other courts have reasoned that a mere ability to search without organizing guideposts does not promote the expeditious resolution of the dispute, the purpose of discovery.  See, e.g., City of Colton, 277 F.R.D. at 584.

Given the nature of the present dispute and the types of documents involved, it would be counterproductive to adopt an approach that imposes no organizing guideposts.  As a specialized court that may confront discovery disputes involving voluminous government files—electronic, paper, and electronic versions of paper documents—that are maintained by various agencies, as well as industry and company documents and files, it is unlikely that the documentary record, reviewed by the court, will correspond to the "form or forms which it is ordinarily maintained," see USCIT R. 34(b)(2)(E)(ii), or that mere searchability will enable a party requesting production to reasonably identify responsive documents.  Moreover, this approach is also supported, in part, by the Advisory Committee Note to the 2006 amendment, which states that "a Rule 34 request for production of 'documents' should be understood to encompass, and the response should include, [ESI] unless discovery in the action has clearly distinguished between [ESI] and 'documents'".  Fed. R. Civ. P. 34 Advisory Committee Notes (2006 Amendment, subdivision a).  Thus, to the extent that the parties in this case disagree on whether subparagraph (i) or (ii) governs disposition of the motion to compel, Gateway's Mot. at 3–4; Maverick's Mot. at 4–5, both apply to Plaintiff's production.

contain inconclusive language such as "include" and "and other documents"—which Defendants object to as failing to identify what other responsive documents are contained in the record.[14]  See, e.g., id. at Good Times RFP Nos. 1, 3.  Likewise, Plaintiff references emails in a general sense without any indication as to what emails are responsive or how they might be located.  See, e.g., id. at Good Times RFP No. 1.  Further, Plaintiff asserts it has produced all non-privileged documents, yet it fails to provide a privilege log.  See, e.g., id. at Good Times RFP No. 10, 13.  Although it is true that searchable ESI weighs in favor of usability, "the purpose of discovery is to enable parties to obtain the factual information needed to prepare their cases for trial[,]" Primos, Inc. v. Hunter's Specialties, Inc., 451 F.3d 841, 851 (Fed. Cir. 2006).  In this case, Plaintiff's general responses, with inconclusive language and no direction as to where to find relevant documents, and without furnishing a privilege log, fall short.  The court "must therefore consider the 'unfair and prejudicial surprise' to a party that may result from allowing [last-minute production of evidence] to be presented during trial."  Id.  (citations omitted).  The purpose of discovery is to narrow the issues and to secure both the evidence to be used at trial as well as information as to the existence of evidence that may be used at trial.  United States v. Optrex Am., Inc., 28 CIT 987, 988, Slip Op. 04-79 at 2 (2004).  "Mutual knowledge of

---

[14] If a party fails to disclose information—or to supplement interrogatory and RFP responses in a timely manner or as ordered by the court—that party "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  USCIT R. 26(a), 26(e), 37(c)(1).  Moreover, under USCIT Rule 37(a)(3), for purposes of a motion to compel, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Therefore, the court will not allow Plaintiff to avoid a potential Rule 37(c)(1) sanction by simply asserting that the relevant document is among the documents produced.

all the relevant facts gathered by both parties is essential to proper litigation."  Id. at 988 (citing to Hickman v. Taylor, 329 U.S. 495, 507 (1947)).

Plaintiff must answer the RFPs posed to it comprehensively, and state whether or not there are any other responsive documents, contained in the ESI, and, if so, either identify those documents, by Bates number or another label, or provide Defendants with sufficient information so that it can identify and find those documents.   Therefore, Defendants' motion to compel is granted with respect to the following requests:

- Maverick RFP Nos. 4, 10, 11, 12, 13, 14, 15, 16, 19, 20, 22, 24, 26, 27, 28, 29;
- Gateway RFP Nos. 4, 5, 11, 12, 13, 14, 15, 16, 17, 19, 20, 22, 24, 27, 28, 29, 30; and,
- Good Times RFP Nos. 1, 3, 9, 10, 13, 23.

Finally, Plaintiff's production in response to Good Times RFP No. 11 is sufficient because Plaintiff has indicated where, in Plaintiff's production, Defendants may locate the requested information. Plaintiff's production is also sufficient for Maverick RFP No. 21 and Gateway RFP No. 21, because Plaintiff has indicated that it is "currently unaware of any such documents."   As Defendants note, should Plaintiff become aware of such documents, Plaintiff shall be obliged to disclose such information in a timely manner pursuant to USCIT Rule 26(e).

**Interrogatories**

Defendants challenge Plaintiff's interrogatory responses as deficient and not in compliance with USCIT Rule 33(d), which sets out the parameters for a responding party to answer an interrogatory by producing business records, including ESI.  Gateway's Mot.

at 12–15; Maverick's Mot. at 13–17.  Defendants contend that Plaintiff must specify the documents from which it can obtain an answer to its interrogatories.  Gateway's Mot. at 13–14; Maverick's Mot. at 14–15.  Plaintiff counters that "[n]o further interrogatory responses are warranted because [its] production of easily searchable ESI is more than sufficient to meet the USCIT R. 33(d) requirements."  Pl.'s Opp'n Br. at 10.  For the reasons that follow, Defendant's motion to compel is granted for Maverick Interrogatory Nos. 8, 9, 11, 19, 24; Gateway Interrogatory Nos. 8, 9, 11, 19, 24; and, Good Times Interrogatory No. 19.  However, the motion is denied for Maverick Interrogatory Nos. 15, 20, 21, 25; Gateway Interrogatory Nos. 15, 20, 21, 25; and, Good Times Interrogatory Nos. 7, 9, 10, 22, 23.

USCIT Rule 33(d) permits a responding party to answer an interrogatory by producing business records in circumstances where "the answer to an interrogatory may be determined by examining . . . a party's business records (including electronically stored information)" and "the burden of deriving or ascertaining the answer will be substantially the same for either party[.]" USCIT R. 33(d).  If such circumstances exist, then the responding party must further "(1) specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giv[e] the interrogating party a reasonable opportunity to examine and audit the records[.]" Id.

Courts determine the adequacy of an Federal Rule of Civil Procedure Rule 33(d) response according to the nature and specificity of the request, see In re Sulfuric Acid Antitrust Litig., 231 F.R.D. 320, 323 (N.D. Ill. 2005) (whether an interrogatory is

responsive depends, first, on the question asked),[15] with due attention given to the superior knowledge and familiarity the responding party has with the referenced documents.  See e.g., Bayview Loan Servicing, LLC. v. Boland, 259 F.R.D. 516, 519 (D. Colo. 2009) (holding that plaintiff's response to interrogatories that asked for specific information was insufficient, because plaintiff merely indicated that information was on a CD, even though the CD indexed and catalogued files).  Vague references to documents do not suffice; rather, the responding party must "adequately and precisely specif[y] for each interrogatory, the actual documents where information will be found."  See U.S. S.E.C. v. Elfindepan, S.A., 206 F.R.D. 574, 576–77 (M.D.N.C. 2002).

Defendants Maverick and Gateway request that Plaintiff state or identify with specificity "every fact" or "every statement" that it believes demonstrates a specific allegation made in the complaint in Interrogatory Nos. 8, 9, 19.  See Maverick Status Report at Maverick Interrogatory Nos. 8, 9, 19; Gateway Status Report at Gateway Interrogatory Nos. 8, 9, 19.  Maverick and Gateway also request that Plaintiff "specify in detail every term and condition 'in the contract' which [the government] contends evinces 'control' and how that term or condition evinces such control."  Maverick Status Report at Maverick Interrogatory No. 11; Gateway Status Report at Gateway Interrogatory No. 11. Finally, Good Times asks whether Plaintiff contends "that there were any common owners, directors, officers, employees, [etc.] . . . between Maverick and Good Times[,]"

---

[15] An interrogatory may inquire into a party's contentions in or opinions of the case, which "may be used to narrow and define the issues for trial" and help a party determine the proof required to rebut the other party's position. Johnson v. Kraft Foods North America, Inc., 236 F.R.D. 535, 544 (D. Kan. 2006).  Rule 33(d) governs such "contention interrogatories," and, insofar as a contention interrogatory seeks material facts supporting allegations, courts have deemed them proper.  See, e.g., id.; see also Ayers v. Continental Cas. Co., 240 F.R.D. 216, 227–228 (N.D.W. Va. 2007).

and, if so, to "state with specificity the nature of the sharing and/ or the common relationship and [to] identify every fact and document which supports [the government's] contention."  Good Times Status Report at Good Times Interrogatory No. 19.

Unlike United States v. Rachel, 289 F. Supp. 2d 688 (D. Md. 2003), which Plaintiff purports to be directly applicable,[16] see Pl.'s Opp'n Br. at 10, Defendants' interrogatories seek evidence that supports specific allegations and contentions raised by Plaintiff. Plaintiff's responses to these requests do not appear to take issue with the breadth of the interrogatory.  Defendants' interrogatories, however, were met, in a number of instances, with a general response that leads with the statement "[t]he evidence shows" followed by an assertion, followed a string of apparently non-exhaustive examples which are prefaced by the phrase "[r]elevant documents include . . ."  See, e.g., Maverick Status Report at Maverick Interrogatory Nos. 8, 9, 11; Gateway Status Report at Gateway Interrogatory Nos. 8, 9, 11.  Moreover, Plaintiff has not included a privilege log, has referenced unspecified emails or documents, and has used language such as "includes" to suggest that its answer is not complete.  Thus, this court, in its discretion, determines that these interrogatories were specific enough to warrant relatively specific and conclusive responses.

Similarly, Plaintiff in certain instances references categories of documents, and concludes by referring Defendants to "documents produced by the Government in this

---

[16]  Plaintiff's reliance on United States v. Rachel, is misplaced.  The starting point for the Rule 33(d) analysis in that case was the understanding that the movant's "document requests were . . . extremely broad."  Rachel, 289 F. Supp. 2d at 693.  From there, the court determined that it was appropriate for the government to respond by providing "access to all available documents" as long as such documents "were maintained in the ordinary course of business in the government investigation."  Id.

litigation."   <u>See, e.g.</u>, Maverick Status Report at Maverick Interrogatory Nos. 19, 24;

Gateway Status Report at Gateway Interrogatory Nos. 19, 24.  This phrase is a catchall

that serves to obscures the response.   By employing this phrase, Plaintiff is effectively

stating that the answer to this question is or may be somewhere among the documents

produced.  A response of this nature is no response at all.  Plaintiff must identify those

documents, by Bates number or another label, or provide Defendants with sufficient

information so that it can identify and find those documents.  Therefore, the Defendants

motion to compel with respect to the following interrogatories is granted:

- Maverick Interrogatory Nos. 8, 9, 11, 19, 24;

- Gateway Interrogatory Nos. 8, 9, 11, 19, 24; and,

- Good Times Interrogatory No. 19.

A number of interrogatories, and their respective responses, do not fall within the

ambit of Rule 33(d), because Plaintiff responds with an answer, rather than by referring

the parties to the ESI.  To the extent that such interrogatories are not objected to, they

must be "answered separately and fully in writing under oath."  USCIT R. 33(b)(3). For

purposes of a motion to compel, USCIT Rule 37(a)(3) provides that evasive or incomplete

answers shall be treated as a failure to respond.  <u>See also</u> <u>NEC America, Inc., v. United</u>

<u>States</u>, 10 CIT 323, 325, 636 F. Supp. 476, 479 (1986).   Ultimately, the court has

discretion to decide whether Plaintiff's response is satisfactory.  <u>See</u> <u>id.</u>

The court, in its discretion, determines that Plaintiff's responses to the

interrogatories listed are sufficient because they illustrate a legal dispute over the framing

of this case.[17]   These interrogatories, and their responses, demonstrate that Plaintiff and

Defendants have differing theories of how the pertinent statutes, regulations, and case

law operate, and what obligations flow therefrom.   Defendants obviously believe that

Plaintiff cannot support many of its claims with "specificity", including its claim that

Defendants operated pursuant to a "special arrangement."   However, as this court has

already ruled, Plaintiff has sufficiently raised a claim upon which relief can be granted.

See Maverick I, 42 CIT at __, 295 F. Supp. 3d at 1379.   The court declines to require

Plaintiff to litigate the issue before trial.   No further response is warranted, save for any

subsequent obligations to disclose pursuant to USCIT Rule 26(e).     Therefore,

Defendants' motion to compel is denied with respect to:

- Maverick Interrogatory Nos. 15, 20, 21, 25;

- Gateway Interrogatory Nos. 15, 20, 21, 25; and,

- Good Times Interrogatory Nos. 7, 9, 10, 22, 23.

**Privilege log**

In many instances, Plaintiff refers to privileged information but has failed to furnish

a privilege log.   When a party withholds allegedly privileged but otherwise discoverable

information, that party "must expressly make the claim; and describe the nature of the

---

[17] Plaintiff objects to Maverick Interrogatory No. 15, Gateway Interrogatory No. 15, and Good Times Interrogatory Nos. 7, 9, 10, as requiring a legal conclusion.  See Maverick Status Report at Maverick Interrogatory No. 15; Gateway Status Report at Gateway Interrogatory No. 15; Good Times Status Report at Good Times Interrogatory Nos. 7, 9, 10.   "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact[.]"  USCIT R. 33(a)(2).  Plaintiff's objection is thus unavailing.  The court may, however, order that the interrogatory "need not be answered until designated discovery is complete, or until a pretrial conference or some other time."  Id.  Nonetheless, for the reasons that follow, the court determines that Plaintiff's responses are sufficient to satisfy the purposes of discovery in this proceeding.

documents . . . not produced or disclosed – and do so in a manner that, without revealing information itself privileged . . . , will enable the other parties to assess the claim."  USCIT R. 26(b)(5)(A).  That party must provide a privilege log explaining the contents of the documents in question and the reason why those documents merit privilege.  See United States v. Optrex Am., Inc., 28 CIT 1231, 1231–32, Slip Op. 04-92 at 2–3 (2004) (citing Burns v. Imagine Films Entm't, Inc., 164 F.R.D. 589, 594 (W.D.N.Y. 1996)).

To the extent that Plaintiff asserts that it has produced all non-privileged documents in its responses to RFPs and interrogatories, it implies that there are privileged yet discoverable documents that it has not produced.  Therefore, Plaintiff must produce a privilege log that expressly makes and explains each claim of privilege and that conforms to the requirements of USCIT R. 26(b)(5)(A).

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' motion to compel discovery is granted; and it is further

**ORDERED** that Plaintiff will provide complete responses to the following requests for production: Maverick RFP Nos. 4, 10, 11, 12, 13, 14, 15, 16, 19, 20, 22, 24, 26, 27, 28, 29; Gateway RFP Nos. 4, 5, 11, 12, 13, 14, 15, 16, 17, 19, 20, 22, 24, 27, 28, 29, 30; Good Times RFP Nos. 1, 3, 9, 10, 13, 23; and, it is further

**ORDERED** that Plaintiff will provide all documents, information, and other evidence related to the following interrogatories: Maverick Interrogatory Nos. 8, 9, 11, 19, 24; Gateway Interrogatory Nos. 8, 9, 11, 19, 24; Good Times Interrogatory No. 19; and it is further

**ORDERED** that, notwithstanding the Amended Scheduling Order at ¶ 7, May 30, 2019, ECF No. 64, Plaintiff shall file its responses no later than April 13, 2020; and it is further

**ORDERED** that Defendants' motion for sanctions is denied.


                                               /s/ Claire R. Kelly
                                              Claire R. Kelly, Judge

Dated: February 7, 2020
       New York, New York