Slip Op. 20-49

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **UNITED STATES,**<br><br>     **Plaintiff,**<br><br>v.<br><br>**MAVERICK MARKETING, LLC ET AL.,**<br><br>     **Defendants and Consolidated Defendants.** | **Before: Claire R. Kelly, Judge**<br><br>**Consol. Court No. 17-00174** |

## OPINION AND ORDER

[Granting Defendants' motion to supplement and denying Defendants' motion to reconsider.]

Dated: April 16, 2020

<u>Joseph H. Hunt</u>, Assistant Attorney General, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for plaintiff United States. With him on the brief were <u>Jeanne E. Davidson</u>, Director, <u>Claudia Burke</u>, Assistant Director, and <u>Stephen C. Tosini</u>, Senior Trial Counsel.

<u>Barry M. Boren</u>, Law Offices of Barry M. Boren, of Miami, FL, for defendants Maverick Marketing, LLC and Good Times USA, LLC.

<u>Mark A. Loyd</u>, Dentons Bingham Greenebaum LLP, of Louisville, KY, for defendant, Good Times USA, LLC.

<u>Rhonda A. Anderson</u>, Rhonda A. Anderson, P.A., of Coral Gables, FL, for defendant Gateway Import Management, Inc.

     Kelly, Judge:  Before the court are Defendants Good Times USA, LLC ("Good

Times"), Maverick Marketing, LLC ("Maverick"), and Gateway Import Management,

Inc.'s ("Gateway") (collectively, "Defendants") motions for partial reconsideration

("motion to reconsider") of the court's order, denying in part and granting in part

Defendants' motions to compel discovery ("order"), as well as for leave to file

supplemental evidence for the motion to reconsider ("motion to supplement").  <u>See</u>

<u>United States v. Maverick Marketing, LLC</u>, 44 CIT __, Slip. Op. 20-17 (Feb. 7, 2020)

("<u>Maverick I</u>"); <u>see also</u> Am. Mot. Partial Reconsideration of [Order] at 1–2, Apr. 14,

2020, ECF No. 102 ("Defs.' Br. Supporting Reconsideration"); Am. Mot. File Supp.

Defs.' Mot. Reconsider, Apr. 14, 2020, ECF No. 103 ("Defs.' Mot. Supp.").[1]  Specifically,

Defendants request, pursuant to U.S. Court of International Trade Rule ("USCIT")

Rule 54(b), that the court reconsider its decision to deny: Maverick's requests for

production ("RFP") Nos. 9, 25, 38, and 39 for industry documents pertaining to cigar

pricing; Maverick's RFP Nos. 30–33 for production related to trademarks of nonparty

companies; and, Good Times' RFP Nos. 4–8, 15, and 17–21 for government documents

on affiliated nonparties.[2]  <u>See</u> Defs.' Br. Supporting Reconsideration at 3–5; <u>see also</u>

Maverick Status Report at RFP Nos. 9, 25, 30–33, 38, 39; Good Times Status Report

---

[1] On February 18, 2020, Defendants filed a motion to reconsider and, subsequently, on March 16, 2020, Defendants also filed a motion to supplement.  However, in light of an error in the named counsel for Defendants, Defendants refiled corrected motions on April 14, 2020 at the request of the court, which the court accepted for filing the following day.  <u>See</u> Order, Apr. 15, 2020, ECF No. 104.  The refiled motions are identical to the originals, except Mr. Boren indicates in the refiled motions that he represents Maverick and Gateway, rather than "all Defendants."

[2] Defendants' motion for partial reconsideration concerns Maverick's and Good Times' RFPs.  <u>See</u> Defs.' Br. Supporting Reconsideration at 3 n.2 (noting that Gateway's RFP Nos. 10, 26, 39 and 40 are the same as Maverick's RFP Nos. 9, 25, 38, and 39).

at RFP Nos. 4, 8, 15, 17–21.[3]  Defendants further ask the court to amend its order

and compel Plaintiff to produce the documents requested.  Id. at 14–15.  In addition,

Defendants request leave to file supplemental evidence in support of that motion.  See

Defs.' Mot. Supp. at 1–2.  Plaintiff opposes both motions.  See Pl.'s Opp'n [Defs.' Br.]

at 1, March 9, 2020, ECF No. 95 ("Pl.'s Br. Opp'n Reconsideration"); see also Pl.'s

Opp'n Defs.' Mot. for Leave Supp. Mot. Reconsideration, Mar. 31, 2020, ECF No. 99

("Pl.'s Opp'n Mot. Supp.").  For the reasons that follow, the court grants Defendants'

motion to supplement and denies Defendants' motion for partial reconsideration.

## BACKGROUND

The court presumes familiarity with the facts of this case as set forth in its

previous opinion, see Maverick I, Slip Op. 20-17 at 3–5, 44 CIT at __, and recounts

those relevant to disposition of these motions.  Plaintiff commenced separate actions,

later consolidated, pursuant to section 592 of the Tariff Act of 1930, as amended 19

U.S.C. § 1592(d) (2012),[4] seeking to recover unpaid Federal Excise Taxes ("FET") from

Defendants.  See Am. Summons, Aug. 3, 2017, ECF No. 8; Compl., July 10, 2017, ECF

No. 2; Order, Sept. 12, 2019, ECF No. 66 (consolidating Ct. Nos. 17-00174, 17-00232,

---

[3] This opinion refers to the Defendants' RFPs and Plaintiff's responses to the RFPs
as itemized and excerpted in Defendants' status reports.  See Discovery Status Report
of Def. [Good Times] in the Maverick and Gateway Cases, Feb. 3, 2020, ECF No. 89-
1 ("Good Times Status Report"); Discovery Status Report of Def. [Maverick], Feb. 3,
2020, ECF No. 89-2 ("Maverick Status Report"); see also Amend. Status Report of
Def. [Gateway], Feb. 4, 2020, ECF No. 90.

[4] Further citations to the Tariff Act of 1930, as amended, are to the relevant
provisions of Title 19 of the U.S. Code, 2012 edition.

19-00004, and 19-00019 under Ct. No. 17-00174).  Plaintiff alleges that Defendants

failed to disclose a "special arrangement."  See Compl. at ¶ 21.  Additionally,

according to Plaintiff, Defendants made material misstatements to Customs and

Border Protection ("CBP") regarding FET owed, by using "transaction value" on entry

forms, when the statute demands application of constructive sales price ("CSP") to

merchandise entered pursuant to a special arrangement.  Id. at ¶¶ 21–25.  Plaintiff

alleges these false statements were the result of Defendants' failure to exercise

reasonable care.  See id.

Defendants deny these allegations, see Defs.' [Maverick] & [Good Times']

Answers and Affirmative Defenses at ¶¶ 21–25, Mar. 29, 2018, ECF No. 48

("Answer"), and raise among their affirmative defenses that they acted with

reasonable care and were not negligent, "because they received and reasonably relied

on professional advice from their customs house broker and an experienced trade

attorney" and fully complied with applicable statutes and regulations.  See id. at

Third Affirm. Defense.  Defendants further contend they were not negligent because

"Plaintiff had an established and uniform practice" ("EUP") of allowing the same

behavior complained of in this case.  See id. at Fifth Affirm. Defense.

On April 4, 2019, Defendants Maverick and Good Times served RFPs on

Plaintiff.  See [Maverick and Good Times'] Mot. Order Compelling Disc. &

Consideration Sanctions at Exs. A–B, Sept. 26, 2019, ECF No. 67 ("Maverick's Mot.").

On June 7, 2019, Plaintiff responded.  Id. at Exs. E–F.  On June 27, 2019, Defendants

notified Plaintiff of their objections to Plaintiff's production responses.  Id. at Exs. I–J.  Plaintiff replied to Defendants' objections on July 10, 2019 and supplemented its responses.  Id. at Ex. M.  Defendants thereafter filed their motion to compel.  See generally Maverick's Mot.

On February 7, 2020, the court rendered its decision on Defendants' motion to compel.  See generally Maverick I.  In relevant part, the court denied the motion to compel with respect to certain industry documents pertaining to cigar pricing, certain trademark information of nonparty companies, and certain government documents on affiliated nonparties (collectively, "discovery requests").  Id. at 6–22.  Discovery remains ongoing.

## JURISDICTION AND STANDARD OF REVIEW

The court continues to have jurisdiction pursuant to 28 U.S.C. § 1582.  See United States v. Maverick Mktg., LLC, 42 CIT __, __, 322 F. Supp. 3d 1373, 1379–80 (2018) (holding that the court possesses subject-matter jurisdiction in this case); see also United States v. Gateway Imp. Mgmt., 42 CIT __, 324 F. Supp. 3d 1328 (2018).

A court may reconsider a non-final judgment, pursuant to USCIT Rule 54 "'as justice requires,' meaning when the court determines that 'reconsideration is necessary under the relevant circumstances.'"  Irwin Indus. Tool Co. v. United States, 41 CIT __, __, 269 F. Supp. 3d 1294, 1300–01 (2017) (quoting Cobell v. Norton, 355 F. Supp. 2d 531, 539 (D.D.C. 2005)), aff'd, 920 F.3d 1356 (Fed. Cir. 2019).  Factors a court may weigh when contemplating reconsideration include whether there has been

a controlling or significant change in the law or whether the court previously "patently" misunderstood the parties, decided issues beyond those presented, or failed to consider controlling decisions or data.  See, e.g., In re Papst Licensing GmbH & Co. KG Litigation, 791 F. Supp. 2d 175, 181 (D.D.C. 2011); Singh v. George Washington Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005).  The movant carries the burden of proving that "some harm, legal or at least tangible," would accompany a denial of the motion.  Cobell, 355 F. Supp. 2d at 540.

Given that the USCIT Rules do not prescribe a procedure to amend or supplement a motion or brief, USCIT Rule 1 governs, granting the court discretion to "prescribe the procedure to be followed in any manner not inconsistent with these rules."  See USCIT R. 1.  Further, USCIT Rule 1 provides that the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination in every action and proceeding."  Id.

## DISCUSSION

Defendants request that the court reconsider and amend its order to compel Plaintiff's response to Defendants' discovery requests.  See Defs.' Br. Supporting Reconsideration at 1–2, 6–14.  Defendants explain this production is relevant for determining whether Defendants' entries were valued at fair market price ("FMP") and whether or not they exercised reasonable care, i.e., were not negligent, in reporting value of their cigars on entry.  See id. at 3–6, 9–13.  Further, Defendants point to Plaintiff's own discovery requests that, in their view, further underscore the

relevance of Defendants' requested production and for which they seek leave to file as supplemental evidence.  <u>See</u> Defs.' Mot. Supp. at 1-2.  Without the requested cigar pricing documents, trademark information, and government documents, Defendants contend that they would suffer harm in presenting their case.  Defs.' Br. Supporting Reconsideration at 1–2, 9.  Plaintiff counters that the motion to reconsider is unwarranted because the court did not err in denying the motion to compel and, therefore, requests the court to deny that motion in full.  <u>See</u> Pl.'s Br. Opp'n Reconsideration at 1, 3–10.  In addition, Plaintiff urges the court to reject Defendants' request for leave to supplement their motion to reconsider, as it is untimely and irrelevant.  <u>See</u> Pl.'s Opp'n Mot. Supp. at 1, 4–5.  The court grants Defendants leave to supplement their motion to reconsider, given that no harm follows from granting their motion, and accepts their supplemental evidence, Pl.'s Second Set of Interrogatories, Requests for Admission and [RFPs] to [Good Times], Mar. 17, 2020, ECF No. 96-1, for filing.  However, and in view of that supplemental evidence, because the discovery sought is irrelevant, duplicative, and unduly burdensome, and Defendants do not persuade that they would be harmed without the requested production, the court denies the motion to reconsider.

## I.    Motion to supplement

Defendants request leave to supplement the motion to reconsider with Plaintiff's discovery requests, because that supplemental evidence "sheds light on the relevance" of Defendants' own discovery requests at issue in the motion to reconsider.

<u>See</u> Defs.' Mot. Supp. at 1–2.  In particular, Defendants allege that Plaintiff's RFPs

seek third-party information that Plaintiff previously characterized as irrelevant and

refused to produce, when requested by Defendants.  <u>Id.</u>  Plaintiff counters that

Defendants' motion to supplement is untimely, because Defendants could have

sought to supplement their motion for reconsideration prior to receiving Plaintiff's

reply to that motion, avoiding a second round of briefing.  <u>See</u> Pl.'s Opp'n Mot. Supp.

at 4.  Further, Plaintiff contends that the supplemental evidence is irrelevant to the

motion to reconsider, because Plaintiff's RFPs concern Good Times' state of mind

about its transactions compared to third-parties, relevant to establishing violation of

19 U.S.C. § 1592(a), unlike Defendants' RFPs that ask Plaintiff to produce documents

pertaining to the government's other enforcement actions, which is irrelevant to the

question of Defendants' alleged negligence.  <u>Id.</u> at 4–5.  Plaintiff, however, raises no

argument that allowing Defendants to supplement their motion would be prejudicial

and, further, does not persuade that the filing is barred as untimely by virtue of

following Plaintiff's response to Defendants' motion to reconsider.[5]  <u>See</u> Pl.'s Opp'n

Mot. Supp. at 4.  Therefore, Defendants are granted leave to file supplemental

evidence in support of their motion to reconsider and the court accepts that

---

[5] Defendants filed their original motion to reconsider on February 18, 2020.  On February 27, 2020, Plaintiff served its discovery request on Defendants.  Thereafter, on March 16, 2020, Defendants filed their original motion for leave to supplement. As explained above, at the request of the court, Defendants refiled both motions on April 14, 2020, to correct an error in named counsel.  <u>See</u> Order, Apr. 15, 2020, ECF No. 104.

supplemental evidence for filing.[6] To the extent that the parties raise questions as to the relevance of that supplemental evidence, the court considers those arguments with respect to the motion to reconsider.

## II.   Motion to reconsider

Defendants request the court to reconsider and amend its order to compel Plaintiff's response to Defendants' discovery requests, see Defs.' Br. Supporting Reconsideration at 1–2, 6–14, because the production is relevant to determine FMP of cigars as well as to establishing Defendants' exercise of reasonable care, and, without the requested production, they would suffer harm in presenting their case. See id. at 3–6, 9–13.  Plaintiff counters that, as the court held, the production is irrelevant and urges the court to deny the motion to reconsider.  See Pl.'s Br. Opp'n Reconsideration at 1, 3–10.  For the reasons that follow, Defendants' motion to reconsider is denied.

### A.   Fair market price

Defendants' view that the government must supply certain industry documents pertaining to cigar pricing to determine FMP is mistaken, because the requested production is not relevant to the Alcohol and Tobacco Tax and Trade Bureau's ("TTB") assessment of Defendants' FET liability, and, to the extent that it

---

[6] Defendants, in amending the motion to supplement, also refiled the same supplemental evidence included in the original motion to supplement.  The court, in granting the motion to supplement, accepts for filing the supplemental evidence, which it deems as filed as of April 14, 2020, the date Defendants re-filed the motion to supplement.

has any relevancy, it is duplicative and unduly burdensome.[7]  Defendants' motion to compel discovery stems from a misreading of the applicable statute and regulations that govern TTB's FET calculation.

Here, Plaintiff alleges that Defendants  erroneously used transaction value as the basis for FET liability, when, given their special arrangement, they should have used CSP as the basis for FET.  See Compl. at ¶ 22; see also Compl., Sept. 6, 2017, ECF No. 2 (from associated Dkt. No. 17-00232).  TTB normally calculates FET based on the sales price that a particular importer sells to an unrelated party in arm's length transaction.  See 26 U.S.C. § 5702(l)(3) ("In determining price [of cigars] . . . rules similar to the rules of section 4216(b) shall apply."); 27 C.F.R. §§ 40.22, 41.39

---

[7]  Plaintiff argues that Defendants' request is also barred by statute, because the United States cannot release a taxpayer's return or return information, absent application of an exception.  See Pl.'s Br. Opp'n Reconsideration at 6; see also 26 U.S.C. § 6103.  Previously, Plaintiff had also argued it could not disclose nonparty taxpayer information that Defendants requested and sought to compel.  See Pl.'s Opp'n Def.'s Mots. Compel at 6–8, Oct. 11, 2019, ECF No. 69.  However, Maverick I did not address the parties' arguments regarding the non-discoverability of nonparty taxpayer information under 26 U.S.C. § 6103 and instead denied the motion on relevancy grounds.  See Maverick I, 44 CIT at __, Slip Op. 20-17 at 6–11.  Again, the court does not need to reach this issue but raises it to note that, to the extent, as Defendants assert, they have authorizations from affiliated companies to permit the government to disclose taxpayer information pursuant to 26 U.S.C. § 6103(c), it stands to reason that Defendants can seek at least some of that information directly from those parties.  See Maverick's Mot. at 8; [Defs.' Gateway Good Times] Mot. Order Compelling Disc. & Consideration Sanctions at 7, Sept. 26, 2019, ECF No. 66 (from associated Dkt. Ct. No. 17-00232).  Although Defendants may wish to use data obtained from their affiliates or other companies as proffered industry data, expert testimony, or other information to demonstrate that a lower price applies to Defendants' cigar entries to determine CSP,  see Storm Plastics, Inc., 770 F.2d at 154–56, it would be unduly burdensome to require the government to attempt to compile this information for the Defendants.

(2014) (setting out how to determine sale price of large cigars).[8] If, however, a sale is not at arm's length, e.g., made pursuant to a special arrangement, and at less than FMP, TTB determines FET liability on the basis of CSP.[9]  26 U.S.C. § 4216(b)(1)(C); 26 C.F.R. § 48.4216(b)-2(e).  CSP is "computed on the price for which such articles are sold, in the ordinary course of trade, by manufacturers or producers thereof, as determined by the Secretary" of the Internal Revenue Service ("IRS").  26 U.S.C. § 4216(b)(1)(C).

In light of the difficulties to determine the price at which merchandise, such as cigars, "are sold, in the ordinary course of trade, by manufacturers or producers[,]" the IRS adopted the "95 percent presumption."  The "95 percent presumption" is the IRS's longstanding practice to presume, for the basis of excise tax, that CSP equals

---

[8] The citation is to the Code of Federal Regulations 2014 edition, the most recent version in effect at the time of the last entries of the subject merchandise. The entries at issue in this action were imported between the years 2012 and 2015. See Compl. at ¶ 1.

[9] Courts have read 26 U.S.C. § 4216(b)(1)(C) as imposing two interrelated criteria for the application of CSP, namely that the sale is made (1) at otherwise than arm's length and (2) at less than fair market price.  Accord Creme Manufacturing Co., Inc. v. United States, 492 F.2d 515, 520–22 (5th Cir. 1974); Storm Plastics, Inc. v. United States, 770 F.2d 148, 152–54 (10th Cir. 1985).  The Fifth Circuit, in Creme Manufacturing, explained that the two criteria are directed to ensuring that the price is a "bona fide expression" of price and an accurate representation of its true worth. 492 F.2d at 520.  Further, by permitting the IRS to employ CSP, "Congress sought to prevent taxpayers from reducing their excise tax liability by charging artificially low prices to related buyers who then, without excise tax liability, might obtain the market price from independent buyers."  Id. at 519 (citing H.R. REP. NO. 708, 72nd Cong., 1st Sess. 38 (1932)).

95 percent of the taxpayer's lowest established resale price to an unrelated distributor in the ordinary course of trade.  A taxpayer may rebut this presumption with industry data, expert testimony, or other information, to overcome the presumption and show a lower price applies.  See Storm Plastics, Inc. v. United States, 770 F.2d 148, 152—56 (10th Cir. 1985) (discussing the practice, as set out in IRS Revenue Rulings, and noting that witness testimony on the industry rebutted the presumption).[10]   Here, Defendants contend that TTB "determined the price used by manufacturers in the ordinary course of trade[.]"   See Defs.' Br. Supporting Reconsideration at 3–4.  Defendants wish to survey the prices at which cigars are sold using unrelated taxpayer information in the government's possession.   Yet, as the revenue rulings demonstrate, when TTB calculates FET based on CSP, it presumes that CSP equals

---

[10] Although revenue rulings lack force of law, they guide IRS officials' practice.  See Storm Plastics, Inc., 770 F.2d at 154 (holding a revenue ruling as inconsistent with Congressional intent).  Relevant here, revenue ruling 62-68, as modified, sets forth the IRS's 95 percent presumption.  See Rev. Rul. 62-68, 1962-1 C.B. 216. ("on intercompany sales at less than arm's length and less than the fair market price, a manufacturer of an article . . . may elect to use as a basis for tax, pursuant to section 4216(b)(1)(C), a [CSP] equal to 95 percent of its selling company's lowest established resale price for the article to unrelated wholesale distributors in the ordinary course of trade."); see also Rev. Rul. 71-240, 1971-1 C.B. 372 (providing that any intercompany sale price that is less than 95 percent of the selling company's lowest established resale price to unrelated distributors is presumed to be less than FMP).  Subsequent revenue rulings elaborated that a taxpayer is entitled to rebut the presumption.  See Rev. Rul. 76-182, 1976-1 C.B. 343; Rev. Rul. 89-47, 1989-1 C.B. 295 (modifying Rev. Rul. 76-182 to enable a taxpayer to rebut the presumption when the taxpayer does not have sales to unrelated wholesale distributors in the ordinary course of trade and, consistent with Storm Plastics, do so "in a variety of ways," be it the use of industry data, expert testimony, or other information).

95 percent of the taxpayer's lowest established resale price the taxpayer sells to unrelated customers.  See Storm Plastics, 770 F.2d at 152.  Therefore, Defendants' request for certain industry documents pertaining to cigar pricing is not relevant, because TTB does not itself investigate and determine what the industry actually charges for that product but applies the 95 percent presumption.  See id. at 152–54.[11]

To the extent that the government calculated liability, i.e., underpayment of FET based on calculated CSP of Defendants' cigar imports, see, e.g., Compl. at Attach. 1, July 10, 2017, ECF No. 2-1, the court compelled Plaintiff to produce documents relied upon in that determination of damages and liability, as requested by Maverick's RFP Nos. 4, 15, 26, and 28.  Specifically, Plaintiff has already been instructed to produce, "every document, spreadsheet, worksheet, supporting documents, or record used by the government to calculate the FETs claimed to be due in this case" as well as "every document or record used or obtained by the government to investigate, calculate or establish the sales price for which each article imported by Maverick was sold in the ordinary course of trade by manufacturers or producers thereof."  See Maverick Status Report at RFP Nos. 26, 28.  Further, Plaintiff must

---

[11] USCIT Rule 26(b)(1) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the discovery outweighs its likely benefit."  USCIT R. 26(b)(1).  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.

also produce information supporting its response to Maverick's Interrogatory No. 3, which provides: "For each item the government contends was not sold in an arms-length transaction, please provide the price at which such articles were 'sold, in the ordinary course of trade, by manufacturers or producers thereof', how each price was calculated, upon what facts and evidence this price was determined to be the appropriate price, and list each and every manufacturer or producer whose prices were examined to determine this price." See id. at RFP No. 15, Interrogatory No. 3; see also Maverick I, 44 CIT at __, Slip Op. 20-17 at 22–23. If Plaintiff relied on other information, or other information is necessary for Plaintiff to make its case, and Plaintiff has not produced that information, Plaintiff may be unable to introduce that information at trial. See USCIT R. 37(c)(1) ("If a party fails to provide information . . . the party is not allowed to use that information . . . at a trial[.]").

However, the court denied the expansive requests for information related to the calculation of FET on all imports of cigars into the United States.[12] See Maverick

---

[12] Maverick seeks: "copies of all documents, records, agreements, and correspondence . . . that pertain[] to the assessment, taxation, or computation of FET for imported cigars since April 1, 2009"; "copies of every document or record which references or refers to advanced pricing arrangements or other agreements, expert reports, audit results and reports, and economic studies that relate or refer in any way to the calculating [sic] of FETs for large cigars"; "copies of any documents and records regarding the sale price of cigars including, but not limited to[,] any report or study regarding cigar pricing"; and, "copies of any correspondence, notes, records, agreements, contracts, documents, rulings, decisions, and audit results including, but not limited to any, Advanced Pricing Agreements or similar agreements, between Customs, TTB, the IRS, or any other government entity and any cigar company or group of companies that relate in whole or in any part to the pricing of cigars." Maverick Status Report at RFP Nos. 9, 25, 38, and 39.

I, 44 CIT at __, Slip Op. 20-17 at 11 n.12.  USCIT Rule 26(b)(2) limits discovery, inter

alia, when "the discovery sought is unreasonably cumulative or duplicative, or can be

obtained from some other source that is more convenient, less burdensome, or less

expensive[.]"   USCIT  R.  26(b)(2)(C)(i).   Defendants  acknowledge  that,  when

calculating FET liability on the basis of CSP, the 95 percent presumption applies,

unless the taxpayer can come forward with industry data rebutting that presumption.

See Defs.' Br. Supporting Reconsideration at 8–9.  They seem to rely upon their right

to rebut that presumption to argue that the information is relevant and aver that it

is in the sole possession of Plaintiff.  See id. at 3, 9.  To the extent that industry data

not already captured by discovery ordered thus far is relevant, placing the onus on

Plaintiff  to  produce  all  the  requested  documents,  records,  agreements,  and

correspondence pertaining to all companies' pricing information would be overly

burdensome, as Plaintiff has reasonably explained.  See, e.g., Maverick Status Report

at RFP Nos. 9, 38, 39; see also Pl.'s Opp'n Defs.' Mot. Compel at 8, Oct. 11, 2019, ECF

No. 69 ("Pl.'s Opp'n Mot. Compel") (explaining that "[t]he effort to retrieve and

produce all these records for TTB alone, and not including IRS records, would take

3,800 to 4,800 person-hours at a cost of $153,446.40 to $191,808.00" to respond to

Maverick RFP Nos. 38 and 39, alone).  To hold otherwise would be tantamount to

reversing the government's use of the 95 percent presumption in the first place: the

government would be forced to compile and maintain industry data in order to pursue

a penalty action for underpayment of FET.

### B.   Reasonable Care

Likewise, the reasonable care standard fails to justify Defendants' requests. The reasonable care standard, as the court previously explained, "is concerned with the reasonableness of a defendant's actions alone—not whether the actions of similarly situated entities evinces a 'reasonableness' standard that would bear on defendant's actions." See Maverick I, 44 CIT at __, Slip Op. 20-17 at 10; see also United States v. Aegis Sec. Ins. Co., 43 CIT __, __, Slip Op. 19-162 at 26 (Dec. 17, 2019) (determining that whether or not one exercises reasonable care does not depend upon the "consensus in the community[,]" but rather on the "application of reason").[13] Defendants, in requesting production of trademark information of nonparty companies and government documents on affiliated nonparties—i.e., Maverick's RFP Nos. 30–33 and Good Times' RFP Nos. 4–8, 15, 17–21[14]—seek to establish that "the

---

[13] The H.R. Report on the amendments to 19 U.S.C. § 1592 provides examples of steps an importer should take to meet the "reasonable care" standard, including: "seeking guidance from the Customs Service through the pre-importation or formal ruling program; consulting with a Customs broker, a Customs consultant, or a public accountant or an attorney; using in-house employees such as counsel, [etc.]" H.R. REP. NO. 103-361, pt.1, at 120 (1993), reprinted in 1993 U.S.C.C.A.N. 2552, 2670. Notably, these examples do not include relying on the government's past action or inaction toward the behavior. Id.

[14] Maverick RFP Nos. 30–33 seek trademark information of nonparties, such as "documents or records which identif[y] all the trademarks" on cigars manufactured or imported by named nonparties. See Maverick Status Report at RFP Nos. 30–33. Similarly, Good Times' RFP Nos. 4–8, 15, and 17–21 request government documents on affiliated nonparties, i.e., "copies of every document, record, or communication" concerning a named nonparty, see Good Times' RFP Nos. 4–8, 15, and documents and records, inter alia, related to federal investigations of Good Times and its affiliates. See Good Times Status Report at RFP Nos. 17–21.

requirement to disclose [their arrangement] was not known in the trade," and, as a result, Defendants were not negligent.[15]  See Defs.' Br. Supporting Reconsideration at 12 ("Something must put [importers] on notice that they might not be in compliance with the law").  Yet, contrary to Defendants' assertion, the statute and regulations compel disclosure of a special relationship.  See 19 U.S.C. §§ 1484(a), 1592(a); 26 C.F.R. § 48.4216(b)–2.[16]

In addition, Defendants mistakenly invoke, and selectively cite to, Hitachi v. United States to argue that knowledge in the trade is relevant to their defense against negligence.  See Defs.' Br. Supporting Reconsideration at 10–13 (citing Hitachi v. United States, 21 CIT 373, 964 F. Supp. 344 (1997), aff'd in part, rev'd in part, 172 F.3d 1319 (Fed. Cir. 1999)).  Relevant here, Defendants refer to the Court of Appeals' decision to argue that "if the requirement to disclose was not known in

---

[15] Specifically, Defendants assert that trademark information of nonparties is relevant to whether there was a requirement to disclose a special arrangement because, "TTB audited [those] companies and did not find that importing cigars with trademarks owned by others was a disqualifying factor," when, in this case, Plaintiff contends that Good Times controlled the importer "because the imported cigars bore [Good Times'] trademarks[.]"  Defs.' Br. Supporting Reconsideration at 12.

[16] Defendants may be trying to assert that they were not on notice that the particular circumstances of their transactions were made under a "special arrangement" that needed to be disclosed.  If that is their position, whether the statute and regulations provide notice of the need to disclose a special arrangement does not rely upon the knowledge or actions of other importers.  Defendants raise, as a separate affirmative defense, that "26 CFR § 48.4216(b)(2)(e) [sic] is void for ambiguity."  See Answer at First Affirm. Defense.  Section 48.4216(b)-(2)(e) sets out when a sale is "considered to be made under circumstances otherwise than at 'arm's length[,]'" including when "[t]he sale is made pursuant to special arrangements between a manufacturer and a purchaser."  26 C.F.R. § 48.4216(b)(2)-(e)(2).

the trade, then the Defendants would not have been negligent under <u>Hitachi</u>." <u>Id.</u> at

12. However, in that case, the government challenged on appeal the Court of

International Trade's decision not to penalize importer's failure to disclose escalation

payments under an economic price adjustment clause because it would be contrary to

due process. <u>See</u> <u>Hitachi</u>, 172 F.3d at 1330. The government argued that the

importers had notice that they must disclose escalation payments and the importers'

failure to disclose violated the Customs laws. <u>See id.</u> 1323–25. Yet, as the Court of

Appeals for the Federal Circuit explained, no statute or regulation required the

disclosure of the escalation payments. <u>See id.</u> at 1330. The Court of Appeals for the

Federal Circuit faulted the government in suggesting that, in the absence of such a

statute and the presence of a Customs Decision, that such reporting was not required.

<u>Id.</u> at 1330–31. In such a situation the Court of Appeals tasked the government to

point to some knowledge in the trade. <u>Id.</u> Unlike the situation in <u>Hitachi</u>, the statute,

here, clearly proscribes Defendants' conduct. Further, the government is not

estopped from enforcing its laws, irrespective of whether, and to what extent, it has

enforced the law in the past or its state of mind in deciding whether or not to enforce

the law.[17]  <u>See</u> <u>Hitachi v. United States</u>, 21 CIT 373, 390–91, 964 F. Supp. 344, 363

---

[17] Although Defendants emphasize they "do not seek to estop Plaintiff from enforcing
the law," they argue that estopping enforcement "must be balanced with the
requirements of due process in relation to notice." Defs.' Br. Supporting
Reconsideration at 13. This argument conflates the due process considerations of

(footnote continued)

(1997) ("Despite the harsh consequences, the federal government is not estopped to enforce laws against citizens who were advised by government that their actions were legal when the government later ascertains that such actions were not in compliance with the law.").[18]  The government's treatment or past investigations of nonparties do not relate to whether Defendants, here, violated the law or acted with reasonable care.[19]  Therefore, information on trademarks and government documents are not

---

notice, whether a party has notice of penalizable conduct, with reasonable care, the conduct required to avoid the penalty of negligence.  See, e.g., Lambert v. California, 355 U.S. 225, 228 (1957).

In addition, Defendants attempt to distinguish differences in the government's obligations for unliquidated as opposed to liquated entries.  See Defs.' Br. Supporting Reconsideration at 13–14.  They state that "[i]n proceeding against Defendants for liquidated entries as the Plaintiff does here, the bar to estoppel does not bar Defendants from using Plaintiff's past practices as evidence relevant to whether or not Defendants exercised reasonable care or were negligent in relation to Plaintiff's 19 U.S.C. § 1592 claims."  Id. at 14.  However, reference to Plaintiff's alleged past practice is irrelevant, because declining to act does not establish a practice.  See Maverick I, Slip Op. 20-17 at 9, 44 CIT at __.  Moreover, it is not the bar to estoppel that renders the Defendants' request irrelevant; it is the reasonable care standard.

[18] Similarly, Defendants' citation of the lower court's decision for the proposition that Customs' past acquiescence would be evidence tending to show reasonable care in the circumstances is also misplaced.  See Defs.' Br. Supporting Reconsideration at 12.  Read in context, the court explained that "even if there were such a past practice, it would not estop the federal government from enforcing the statute."  Hitachi, 21 CIT at 390–91, 964 F. Supp. at 363.

[19]  For example, Maverick RFP Nos. 30–33 seek trademark information of nonparties, such as "documents or records which identif[y] all the trademarks" on cigars manufactured or imported by named nonparties.  See Maverick Status Report at RFP Nos. 30–33.  Maverick claims this trademark information is relevant because Plaintiff invokes Good Times' ownership of trademarks on the imported cigars to

(footnote continued)

relevant in determining whether Defendants' conduct would be that "expected from

[] person[s] in the same circumstances." See Defs.' Br. Supporting Reconsideration

at 9 n.13, 10 (citing 19 C.F.R. Pt. 171, app. B(D)(6)). Moreover, Plaintiff has

reasonably explained that the cost of obtaining the documents requested would be

overly burdensome to the government given the limited, if any, relevancy. See, e.g.,

Maverick Status Report at RFP Nos. 5–8, 15, and 17–21 (Plaintiff objects that the

requests are overly burdensome).

Nonetheless, Defendants seek to establish that the discovery sought is relevant

by pointing to Plaintiffs' requests for information about third-parties. See Defs.' Mot.

Supp. at 1–3.[20]  This argument is unavailing.  As a threshold matter USCIT R.

26(b)(1) permits discovery regarding any nonprivileged matter that is relevant to any

party's claim or defense "[u]nless otherwise limited by court order."   USCIT R.

---

demonstrate Good Times' control, Defs.' Br. Supporting Reconsideration at 11–12, and avers that it believes the government did not pursue other similarly situated parties. See Maverick's Mot. at 8.  Likewise, Good Times' RFP Nos. 4–8, 15, and 17–21 request government documents on affiliated nonparties, i.e., "copies of every document, record, or communication" concerning a named nonparty, see Good Times' RFP Nos. 4–8, 15, and documents and records, inter alia, related to federal investigations of Good Times and its affiliates. See Good Times Status Report at RFP Nos. 17–21.  Setting aside the variety of a factors that the government considers in determining  whether to pursue an investigation, even if another company might have acted in the same manner as Defendants is not relevant to whether Defendants exercised reasonable care here.  See Maverick I, 44 CIT at __, Slip Op. 20-17 at 10; see also Aegis, 43 CIT at __, Slip Op. 19-162 at 26.

[20] Defendants point to supplemental evidence that comprises Plaintiff's RFPs pertaining to an email regarding other importers' contracts and for documents within Good Times' possession relating to the determination of FET on tobacco products.  See Defs.' Mot. Supp. at 2–3.

26(b)(1).  Federal Rule of Evidence 401 provides "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  The court may limit the proposed discovery if it is irrelevant.  USCIT R. 26(b)(2)(C)(iii).  It is for the court to determine what is relevant.  See Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384, 387 (2008) (noting that the question of relevancy is one reserved to the sound discretion of the trial court.).  Moreover, it is possible for plaintiffs and defendants to seek discovery for different purposes depending on their claims and defenses.  Plaintiff here claims to seek information regarding Good Times' state of mind as allegedly relevant to liability under 19 U.S.C. § 1592.  See Pl.'s Opp'n Mot. Supp. at 4.  However, whether or not the documents Plaintiff has sought are relevant to its claims is not before the court.  The issue before the court is whether the documents requested by Defendants are relevant.  Defendants fail to persuade that Plaintiff's discovery requests in this case bear on the relevance of their own discovery requests.

## CONCLUSION

Defendants have not demonstrated that they would suffer harm if the court declines to reconsider and amend its order.  Although Defendants contend they "would be harmed by the[] unavailability" of the requested production to make their case, see Defs.' Br. Supporting Reconsideration at 2, Defendants' discovery requests are irrelevant, duplicative, and unduly burdensome.  To the extent that the requested

information is relevant, Defendants may pursue alternate avenues that alleviate the burden of production otherwise placed on Plaintiff.  Further, if Plaintiff relied on any other information in the determination of FET of Defendants' cigar imports, or if it would need to rely upon any other information at trial to make its case, and did not proffer that relevant information, Plaintiff may be unable to introduce that information at trial.  See USCIT R. 37(c)(1).

For the foregoing reasons, it is

**ORDERED** that Defendants' motion to supplement is granted; and it is further

**ORDERED** that Defendants' supplemental evidence, Pl.'s Second Set of Interrogatories, Requests for Admission and [RFPs] to Good Times, Apr. 14, 2020, ECF No. 103-1, is accepted for filing and is deemed filed as of April 14, 2020; and it is further

**ORDERED** that Defendants' motion for reconsideration is denied.


/s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated:        April 16, 2020
               New York, New York